the fourth district appellate court of the state of illinois has reconvened the honorable thomas m harris presiding good morning this is case number 4-24-0122 robert taylor versus raven bradford uh for appearances first for the appellant uh mr nepal jeffrey nepal attorney for appellant raven bradford thank you and for the appellee john patrick brown attorney for robert taylor appellee okay thank you mr nepal you may proceed with your argument thank you your honor um let me first begin by reminding everyone why we're actually here what we have here is a mother that was heinously attacked by the father of their children in the presence of the party's daughter in so doing the father likewise became angry and directed his anger physically against the daughter on that same occurrence this not being bad enough it comes on the heels of a father's i'm sorry the father's prior conviction for domestic battery against the mother when she was pregnant with their youngest child promises of course were made promises were broken what is obvious is the four years in prison didn't serve as a deterrent to him to treat the mother differently as mother reflected in her limited couple minute interaction with the father post his release it is true that the family of the father has been supportive to the mother while the father was away in prison but it's undeniable that he has not seen these children since well since he went away at this point in time the youngest child more than likely has no adequate memory of him at all or any memory at all i should and the next oldest child the oldest child of the two is the child that was involved on the day that witnessed his mother being choked by the father unrelentingly and likewise was the subject of physical discipline from the father for just looking out the window and coming down from upstairs that child is still receiving counseling for the incident and is still suffering from emotional harm it is true she wasn't physically injured just the mother but that was bad enough to cause this family ongoing problems following that the father is sentenced to prison as a result of a negotiated plea in which the mother was asked and or allowed to participate under the victim's rights act that allows a victim of a crime like this to participate in the dispositional section of the trial meaning at the time of sentencing here the mother had active involvement with the case she was informed that for the four-year period of time following his release from prison mr taylor would be required to serve uh that uh in the area of the in the chicagoland area subject to their zone restrictions he was not to have any contact with the mother or for that matter the children until the completion of his term of supervised release this was all negotiated in advance of the disposition the mother was consulted she assented and felt that she was being properly protected by the people instead of illinois at that time let's move forward now as i said earlier mother maintained contact with the father's family hardly a person who's trying to disassociate the she made it a point to include the father's family in the children's lives however some of that had to be curtailed because what they were doing is interjecting the father into the parenting time through use of things like the phone and zoom conference calls and whatnot as i understand it this was having a negative impact on the children mother was open about this to the father's family as was she open about the fact that she really did want to move the record is uh it is it is contained contained within the record you will find where his family meeting mr taylor's family offered assistance to move uh ms bradford to the state of georgia although there's some question as to whether that assistance was actually offered or just shared with her as a promise to get her to stay here in the quad cities that being said that didn't work out and she was again reassured he'd be living in chicago and the family bought her a home no restrictions placed in the was a kind act on their part i think they also might have helped with a car but that being said there were no restrictions placed on her use of the money and not even a discussion was had to the contrary discussions about her moving were occurring during the time time of his incarceration he gets out and it's unfortunate for him that his mother has a medical event he applies for an exception to his prior sentence and now all of a sudden he's moving back to the immediate quad area this is a small community in which there are several even smaller cities people here tend to run into each other an awful lot and we might be living in a very very large community if you consider the state of iowa but not a lot of our people here do travel across the river they do tend to run into each other at the grocery stores in various places since the mother had previously been reassured this was never to occur but she had four years to work out what might happen for parenting time naturally when the mother was informed 48 hours prior to his arrival here in the quad cities that everything she had been told by the state everything she had been promised by the state and everything she thought was going to occur had dramatically changed instead the parole officer not an expert in the field of child custody or in the areas of child psychology decides to punt that decision over to the trial court not the same trial judge that was involved in the sentencing relative to the harm that the father committed upon the mother and the party's children but rather a new judge who didn't have any prior familiarity with this case under the one judge one child rule one would have thought that judge kazarich should have been in charge of this because she was the one who heard all the evidence regarding the egregious nature of the criminal acts committed upon the father by mother not even a transcript was ordered and to be quite frank i don't think anybody thought that we needed it at the time of that hearing because it was just a temporary hearing that is important for our analysis because a temporary order entered in a child custody dispute or visitation dispute or even in a dispute over the allocation of parental responsibilities is a temporary order entered without prejudice designed to put a band-aid on the situation to essentially acknowledge what the parties have been doing keeping it in place until final hearing so the parties don't engage in ongoing conflict that might negatively impact the best interests of their children here we come to a temporary hearing it's called trial before the parties have the opportunity to fully engage in discovery and it is more or less a trial by well we're here we have to do this now because we've got a situation and we didn't get proper time to engage in all the discovery we normally would if we were going to proceed to final trial that's ordinary no reason to be concerned until such time that temporary hearing turns into a de facto final ruling yes if i may with regards to the factors the court is to consider in 602.7 uh when entering a temporary order what is the best evidence that the judge's decision to require the appellant to move back was clearly against the manifest weight of the evidence and was a manifest adjustment what specific factors favor your argument yes your honor thank you for redirecting me i appreciate it sometimes i talk too much so um in short what we have is a situation where the mother and it was agreed to by all parties had no restrictions on her ability to move because there had never been a court order prohibiting her from doing so she instead decided to move to the state of texas a long place away from here and opportunity to exercise jurisdiction under the emergency clause of the uniform act would have protected her down there but she's not a person that has a great amount of financial resources we saw this at trial now they know she's down there she utilized the cell proceeds from her house to move down there it cost her around 30 grand to accomplish everything mother's family not parties to this case the judge notes are going to pay for to move back here but again this is a temporary order that doesn't make any sense the children have been down there for two and a half going on three years they're well integrated into the community they're their current health care providers all their educators and every person of importance to their life except their extended family is up here but here's the most important part your honor for the 24 month period of time preceding this custody dispute which is what we're obligated to look at by statute the father had absolutely no contact with either child to this he's had no court-ordered contact although there's some inferences that he may have inappropriately tried to communicate with the kids when they were with the other family but the inequities exist because of the absolute financial inability for her to pay for move back the lack of the court being able to enforce any pay her now order to move her here and the children have been there call it what we will for but going on close to two and three quarters years which is well no longer than that he was away for four years which is double the period of time we are to analyze the father has no existing relationship with the children to protect whereas the mother conversely is doing everything she can on her own and believe me the financial assistance has stopped to make it work down in texas which she's been able to do successfully the children are doing extremely well a lot of their emotional issues have dissipated the party's child is still i may on you're asking for a remand what what specific remedy would your your client be seeking on remand and are you opposed to the suggested reunification therapy that the court ordered no first of all we're not opposed to that in fact i was the one who came up with the ideas to suggest to the court on how to accomplish that but what remedy is she seeking uh upon any remand to stay where she's living right now where she's been living now for a very long time where the children are doing extremely well to comply with any and all court orders that are entered by judge zimmer wherein she's supposed to engage in unification therapy judge zimmer not a big fan of zoom hearings or anything like this just doesn't really believe in the internet as a form of appropriate communication that's been my experience but we all know that we're getting telehealth these days there's tele mental health counseling these days there is likewise an ability for this counselor that we all chose at my suggestion i might add to be able to accomplish the same objectives as he did when he provided counseling during the pandemic he's well able to to to meaningfully guide this family through that rehabilitative process if it can be accomplished he's the guy to do it we have all the mechanisms in place the judge was just hesitant to do that because he didn't think that it would be meaningful reunification therapy if it occurred via zoom but yet nobody asked whether this counselor was qualified and had experience in conducting sessions over zoom any any any is as as most counselors had to do during the pandemic and all the needs of the children best interest of the party's children could be served in that manner then mr sample who is a counselor not a doctor could thereafter uh ask that any additional mental health care testing occur to determine if father has actually rehabilitated himself as opposed to from classes he may have attended but not been tested out on when he was away this thing can't be properly managed my client comes up here that's in the record to make sure the children have access to their extended family up here not because she was quartered to because she does my client also agreed to initiate contact with the father from the inception of this case just to be done in a very controlled manner she would have liked to have had him complete his full sentence as he agreed would be in the best interest of everyone but here he's not going to do that apparently um he wants to have his parenting time now and i get that i do a parent wants to see their children but a parent who can't recognize the harm he caused to his children and make amends for it first doesn't show the kind of insight that he ought to be showing in this situation at trial he even went so far as to say how many times do i have to say i'm sorry for this event which was very offensive i might add and if the record is reviewed carefully he even told me at the hearing i had better stop asking him questions about that time this man needs some help nobody's saying we want to terminate his rights we want him to get the help that's going to be necessary for these kids to have two parents not just one two proper parents who know what to do to take care of the best best interest of the party's children here raven clearly has all that in mind she's made a proper life for the kids down in texas they're doing extremely well why would we want to upset the apple cart on a temporary order which again is entered without prejudice how is she ever to get back to texas at the end there are two flights a day out of the quad cities to dallas fort worth direct there are more than adequate amounts of resources within his family he hasn't paid a nickel in child support since he's been out he ought to have enough money to fly down to texas which my client invited with certain restrictions to help this relationship between father and children survive she's done everything besides move back here your honor and would ask that she be allowed to stay there at least until the final hearing so the court can have adequate time to see how reunification therapy might work on a long distance basis and how the father's parenting time the quality of it actually is because that can be established through a temporary order to we adjust and the children adjust through parenting via zoom or any other method that they determine is appropriate is the no contact order still in place counsel between your client and the appellee it is thank you and i don't know how much time i have left i don't have the red light normally i'm accustomed to when i'm arguing there's a timer that says you have six minutes left okay all right thank you your honor uh to put it to present this summarily what we have is a situation where after a full hearing where conduction where discoveries have been completely uh where discovery has been completed after a full hearing this court may very well make the same ruling i i don't see how he can but that's not for me to decide what i do know that is on a temporary basis this makes absolutely no sense the injustices are great for my client and the impediments are few for the father let's remember he has not had any meaningful contact i don't believe any contact at all since he was sent away to prison many years ago this obviously is not burdening the party's children they're doing well where they're at we're supposed to care about them and the father's flippant attitude at the trial where he's still to this day says he only pled guilty to avoid having his daughter have to get on the stand you know there's plenty of physical evidence about the crimes and harm that he committed to miss bradford and it is uncontested that he physically harmed well he he in anger uh physically disciplined the party's daughter all of that is uncontested his statement i pled guilty to avoid the daughter having to testify is disingenuous at best because they had the physical proof of the injuries of the mother and the other events circumstantially that would have proved the neglect to the daughter the father also said how many times do i have to say i'm sorry to raven when she initiated one phone call from texas to illinois as a parent who's subject to an obligation to help facilitate a relationship between parent child would ordinarily do there was no risk of harm to her at the time and i think judge zimmer was miss it wasn't proper to say that she wasn't in fear of him because she placed a phone call she also testified that her his family members had reassured her about all the progress the man had made but within a few minutes of being on the phone with him she realized that was not actually the case and you know these classes they take when they're away you sit in a room you participate you listen but they don't test you they don't conduct any sort of diagnostic testing that would show objective results they just reflect he spent the time in the room which we applaud him for but it doesn't mean that he has control of his emotions here the mother properly after being misled by the courts misled by his family and quite frankly everyone she was supposed to be able to count on even had her own family members uh alienated from her by this family and when she found out all that what was she supposed to do all the protections she had guaranteed for her and her children have been swept away unilaterally by the father and his actions and those that are supposed to protect her ignored that responsibility so she moves to texas which is proper and you know appley does not address the emergency clause that allowed her to move to texas it exists in the domestic violence act it exists on the uniform act and texas was an appropriate place for her to be under the emergency clause of the uniform act as well i don't see especially given the fact there was nothing that prohibited her from moving to texas and we all stipulated that there's nothing in the best interest factors aside from ongoing contact with father of which there were none in the 24-month period of time preceding when this dispute started i don't see how that one factor balances against all the harm my client's going to have to endure if she's forced to move up to the state of illinois now without a job a place to live or any meaningful support system here that is left the children will undoubtedly suffer and the father ought to be ashamed quite frankly for not taking the children's emotional conditions more into consideration when he's in here trying to brazenly say i can go drink i don't have to be in recovery programs there's evidence from his own family that he's violating what we ordinarily would see for a person with a drug and alcohol problem by having drinks on occasion that's even written in the peli's brief that his aunt or mother or somebody said that he was still continuing to drink he's not doing what he's supposed to do to get well and his children are to suffer because that man is so selfish to only think about himself before making himself right before wanting to be part of these kids lives again please protect my client that's what the overall goals of the illinois domestic violence act are the criminal justice system as well and while i recognize the goals of a family court are to promote reunification and to facilitate a close relationship some people just don't deserve that right this man may in the future if he proves he deserves that right be afforded that privilege but he hasn't done it yet and let's not play roulette or just roll the dice with these kids future please let's protect them that should be the order of the day thank you all right thank you mr nepal you'll have time and rebuttal may proceed with your argument your honors may it please the court and thank you for the time that you've given us today um i would first want to start out with the argument about jurisdiction which the appellant made um in her brief and the argument about jurisdiction has not been made today i think that the i think it's important to note that the mother was seemingly content litigating this matter uh on its merits in the illinois court until she got an adverse rule and only after the adverse ruling is the mother complaining that the texas court should have jurisdiction and it was only made on a motion to reconsider and as this court knows that argument is forfeited because it was first made on a motion to reconsider it certainly strikes me as forum shopping because the mother got a ruling that she did not wish to have aside from that and i think it's also clear that illinois is a home state and properly can exercise jurisdiction in this case aside from that the mother is making some comments to the effect that she is okay with having the father doing reunification therapy and i'm very happy to hear that because the mother at the hearing testified that she didn't want the father to see the children while he was on mandatory supervised release at all and so now that that has changed i think that that's a good thing and i think it's also important for this court to consider what has actually been ordered in this case there is the mother's argument seems to suggest that there is some significant concern as to the children's safety or as to abuse or something like that what has been ordered here is reunification therapy with a licensed counselor the father is not getting 50 50 parenting time or majority parenting time or even wednesday nights and every other weekend this is reunification therapy to try to re-establish a relationship with his children and yes the father was in prison yes the father was convicted of something that was very bad the father served his sentence he's still on mandatory supervised release he is still bound by the no contact order which prevents him from contacting the mother and by all accounts he has abided by that and it would seem to me and i think it would seem to the to the trial court that it's appropriate for the father to have some chance to re-establish a relationship with his children the mother says excuse me counsel if i may yes and i appreciate the noting what has been ordered but in conjunction with that the court requires is requiring her to move from the state that she's currently living in and my understanding from the record is all parties agreed that 609.2 did not apply so it's not just reunification therapy it's requiring to move back in and live in the state of illinois correct that is correct your honor and this is being done on a a temporary basis that is correct your honor and so we're not in a situation with under the best interest umbrella where the court has even determined whether or not parenting time should occur correct not on a permanent basis no and the the court has ordered reunification therapy to try to re-establish a relationship between the mother between the father and the children and the court did rely upon and review at least mentioning a couple of factors suggested that your client's family would have the financial ability to assist her in moving back did that also include the of her business and re-establishing a business here what were the limits with regards to what financial assistance they were going to provide there was no particular statement as to what financial limits that their financial support that they were going to be required to or willing to or order to provide the court did no or i think it has the there has been testimony that the mother was gifted a house by the father's family she then sold it used some of the proceeds to move down to texas and is now renting there i suppose that that would probably if there is a concern if there is some sort of issue with being able to with the financial support not being sufficient something of that nature that could probably be an issue for the trial court and it i don't see any reason why that shouldn't be the basis of some sort of emotion or a temporary order if the if that is an issue and if the mother says that what she's getting is not sufficient and at this point though your it wouldn't be your client that would be being ordered it would somehow be the trial court entering an order that requires his family to do something correct there he does not have those resources that was i don't believe that the record indicated that he has those resources at this time and it would seem that the mother's family or sorry the father's family has been generous in the past and it appears that that is the assertion that they would be in this case as well thank you thank you your honor and mr brown before you proceed with your argument just if you could distill uh for us here uh what was the legal basis for the return from texas the legal basis was that the that the mother had already taken the children while the case was pending and that the father he who had been in prison for years and who had not seen the children for years needed to be able to re-establish a relationship with them and the trial courts the trial court's decision was that doing some sort of therapy by zoom was not going to be sufficient and that the father needed to see them in person and that was the that was the basis at least as i understood it in this in in this record for the father for the mother being ordered to bring the children back well i understand the practical reason that he wanted the mother to return uh but what was the legal basis underpinning uh the trial court's ordering her to return the legal basis as i understood it your honors was the best interest of the children that it would be in their best interest that the father be able to see them in person and that it was appropriate and the base based on all of the and in fact your honor i i looking at the record now it is on page six of volume two it specifically says the primary goal of the court is the best interest of the children and that's preserved by contact with both parents that was the basis of this case your honors okay how do you reconcile go ahead justice harris no i was just thank you for answering my question how do you reconcile the council the fact that 609 to 609.2 does not apply and so she had the right to move and yet with best interest when we're talking about that generally we're talking about allocation of parenting time we're talking about allocation and decision making to follow up with justice harris's question then what authority do they really have to have her move back could it not be that this reunification therapy could occur in person without requiring her to in different states and they bring the children for visit for parenting time in the other state why what is the authority to mandate that she moved back i think the authority in this case your honor is that the mother the mother first off the mother had been able to move there and that she and i apologize the i think the authority is simply in the best interest of the father that the court has the ability to say what is an appropriate place and i think it's not outside the court's authority to say that the trial that this reunification therapy is not going to take place effectively in texas that it's going to be impossible or it's not going to be reasonably likely for the father to be able to make these trips down to texas on a routine basis particularly when the mother only decided to move after this case was i shouldn't say when i decided to move but only did move after this case was pending and i don't think that it's i don't think it's against the manifest way of the evidence to say that when the children have lived here their entire lives until the mother moved after the petition was filed um to say that if the children should be brought back up here where their entire family is or actually at least where their family has been where their where their roots have been and where their father can try to have some sort of a more effective relationship with the children because it's in all reality the father who is still on mandatory supervised release is not going to be effectively able to get in-person reunification therapy with the children when they're in texas and what is in the record to establish for this court what what constituted reunification therapy is that a counseling session once a month with a counselor and the father and the children present what was in the record to establish specifically what you meant by that um what's happening is what at least what the record would appear to suggest to me your honors is that the they're supposed to be periodic and i don't believe it specifically says i don't believe it specifically says how often but there are supposed to be periodic meetings in an office with the counselor with mr sam and that and that would be in just between your client and the counselor initially not involving the children it would involve the and it would involve the children yes they would they would be there and the counselor would be i would presume trying to orient it properly trying to make sure that conversations are appropriate what things can be done what things can be said to try to re-establish the relationship things like that now so what evidence is there in the record that reunification therapy is not advisable or practical or done in other situations by zoom i don't think that there is any we're doing we're doing zoom on something that's very important we are doing zoom on something that's very important your honor but there and i'm not suggesting that reunification therapy or that any therapy in all settings could not be done by zoom but i think that it's not unreasonable for the court to say that in person is better in particular when you are trying to get to know your children the court for that matter is only seeing us right now through zoom through webcams on our computers and i don't think that can really as effectively appreciate the nuances of what their child is doing the ticks the tone the things to say the things when to say how to say them what happens if the internet goes out or if the connection is bad for instance what happens if you don't have the best webcam things of that nature and those sorts of things are going to make it more difficult to really see and appreciate everything that's going on with the children for that matter your honors the court can only see right now about to where my mid chest is the court can't see anything down below that because of the way that our zoom cameras are set up the court can't touch me or shake my hand or do anything of that nature and no doubt the father would like to be able to give his children a hug something of that nature which would not necessarily be inappropriate and you can't do that on zoom and they suggest that starting out by having physical contact with this man who abused their mother and he hasn't seen them or had any contact with them he thinks that he's privileged to give them a hug i'm not i don't that doesn't i mean i'm not a suggest to you that doctors and clinical psychologists do zoom counseling all the time across the united states so what i want to know is did the trial judge say nah that wouldn't be as good because i don't like it or i have something to base that on your honor i and i'm not suggesting that the father necessarily be able to have physical contact with the children initially that would depend on what the counselor would think it would depend on what the counselor would say um the the the record says here that it just says there's no way you can do reunification therapy when the children are a thousand miles away i don't think it's against the manifest way of the evidence i don't think it's an abusive discretion i don't think that under any standard of review the court this court should find that that is wrong i think the court can find that some sort of in-person contact at least initially would be appropriate here and i don't think that that is manifestly wrong because why wouldn't you start with zoom therapy initially instead of in person immediately because zoom therapy and i and i understand what the court is suggesting about doctors and therapists and things like that zoom but that is not the relationship between someone who is receiving therapy someone who is getting help of that nature is different as between a parent and a child and the sort of closeness that a parent-child relationship should be i don't think it's unreasonable to suggest that that just cannot be built by video conference because at that point it can't be built by not being child support and not having any contact with them what in your honors that i i agree that that some sort of contact and something of that nature needs to be built the child support in this case has not been that that was not an issue that was considered by the trial court this is something where i ask if there was considered by the trial court it's still a that is evident in the case i i understand that your honors and i would and i agree that the father has not had contact with them in the last number of years and that's because of his actions we're not denying that what i did see what i would suggest though is that in order to establish some sort of parent-child relationship an in-person meeting would be better the mother would seem to think that the father should not be able to have any sort of contact at all because that was um because that was what her argument was at the trial court it's not it's not i don't think that that is against the manifest way of the evidence or i don't think it's against i don't think it's an abuse of discretion to say that some sort of in-person contact is going to be a way to better build that relationship than by zoom and i don't think that the court has reason i don't think the court here should find that that finding by the trial court was inappropriate you said something earlier and you may have misspoke but you said when you were talking about the authority to move back etc you said the court was considering what was best interest of the father of the child of the children i apologize you said father but i wanted to make sure that was you had misspoke i i i did misspeak and your honor your honor the record here says the primary goal of the court is the best interest of the children and that's preserved by contact with both parents it doesn't serve a child's best interest to be separated from a and if we wait until the end of the parole period that just strengthens the distance between the father and the children that is the i am quoting from page six of volume two of the common law record that's what the court said but your client already agreed to that is that accurate my client already to what your honor he agreed to not have any contact for four years during his term of supervised release i don't for for one your honor that's in the records of the of the felony case which have not been made part of the record on appeal here and are you aware that that's accurate i am let me put it this way your honor i'm not i'm not aware that it's accurate or inaccurate i don't i have not been able to see the i don't i don't have transcripts of the uh criminal trial it was not appealed nothing of that nature but in this case it's also to be noted that the parole board specifically agreed to modify that no contact order as approved by the court so they modified it on the basis of a family illness not on the basis that it was out the window i don't think if there's no suggestion that it's out the window and the court still raised still maintains jurisdiction over it if the court at any the way i would interpret that and i think the way this court would interpret it too is that if at some time the trial court decides that best interest of the children is not facilitated by having contact with the father with the father then i would assume at that time so long as mandatory supervised release and so long as the order is still in effect that it would at that time the no contact order would take effect again as to the children so you've agreed not to have contact with your children for four years you get to come back to the area because of an illness in the family and you then initiate contact with the children and your former paramour by filing a court action and seeking to make her uproot her life and the back to illinois that doesn't seem to me like that follows the spirit of the original agreement that he entered into your honor my time is running short so if i might if i might be available just to address that point the father the father did not seek to uproot the mother the mother's life by telling her to return to illinois by filing the petition the mother did not move until after the petition was filed that was the mother's choice and the father then sought to have some contact with the children with that i believe my time has expired unless justice lander do you had a question i do as far as the court's decision and i know you provided us the court statement from that page in the common law record but what specific statutory five factors i know they reference the best interest but did the court articulate specific statutory factors that relied upon in making this determination to require her to move back uh i am not seeing that in the record anywhere i don't believe that happened your honors thank you and with that your honors i will conclude i would ask the court affirm the trial court's ruling thank you okay thank you mr brown mr nepal rebuttal argument yes your honor to suggest that raven was trying to stop all contact with the father is not correct i was there i tried the case it was my idea to facilitate zoom with counselor sample my clients already met i don't think mr taylor availed himself of the offer for assistance through counselor sample sending him his normal communication it was not discussed what kind of reunification therapy would occur yet because counselor sample hadn't started down that process but to suggest my client was content with everything until the court ruled in the manner that he did ignores the realities that nobody was questioning her decisions on moving to texas because after all the parties all agreed in advance of this trial that she had the absolute right to do so here there's discussions about her only moving after she was served that's a false statement she applied as early i believe it's either i believe it's may before she was even served she had her house listed for sale the record is uncontradicted his family members who came to visit saw her boxing up items to move and a for sale sign in the front yard to suggest that they had no idea that until such time that judge zimmer said she had to move back here my client was anything less than content about everything that happened it's just not true she was shocked she was betrayed she was all the things that she had been told she wouldn't have to deal with now being forced to deal with all those things she had been lied to by his family i'm not suggesting the court lied or the parole board lied or anything of this nature but i'm not aware of anybody suggesting that there is an inability to accomplish this kind of reunification therapy via zoom in fact as was noted it is commonplace that we do this now there was no testimony whatsoever to support the fact that children could not conduct counseling through zoom and suggest that father should be able to come in and be in front of the same daughter that when she last saw him had physically hurt her emotionally hurt her and almost caused the death let's let's face it it's it's choking about the neck of the mother and she sat there and watched it through a window and then got beaten by her father who was a drugged up mess that night i think he called it a bad night or bad day we don't want to take a risk on another bad day happening until there's absolute proof that he's been evaluated by somebody who counts somebody that does something other than confirm he sat in a classroom in prison and got a certificate we need to err on the side of what's best for these kids and i don't think it was a freudian because uh as far as him as far as john patrick saying it wasn't the best interest of the father because i don't find anything in the record to suggest that a little girl who last saw her father abusing her mother and then hit her should be just thrust into a parenting type arrangement or any sort of person-to-person contact until such time that a counselor qualified to see if this little girl's even up to this gives her input as i stated and it's uncontradicted she's still receiving counseling to this day and as far as being able to afford driving down there or flying down there as i said it's it's in the record there's two flights a day and approximately 30 grand was the benchmark that was going to be paid to my client to move up here but there were no discussions about compensating her for having to start a new career that's just the cost of moves i did quick math and assuming about 500 a round trip that's 60 plus visits he could be making to texas if my client is not asked to move up here and the family doesn't have to pay the 30 000 there's 30 000 of money that they said that they have to help my client uh stay in texas and at the same time if dad wants to make the effort to come down there like his other family members have done that's in the record too they were invited raven has made her community available to them for having parenting time in texas he just won't do it he doesn't have to apparently and nor does he have to do anything other than say he wants these kids now without consideration as to what we need to do to get these kids much less ready for some sort of reunification therapy and even seeing their dad even having a verbal conversation with him i'm sure will be upsetting to these children not to mention raven raven bradford that almost died at the hands of the father who's the one who's now being vilified this sort of reminds me of the rape cases that are defended by attacking the victim here she was battered horribly abused lied to by the same family members that tried to exclude her family from her life but she could rely upon all these people but only in the end to have all that taken out from under her but yet she still puts a smile on her face she still calls she still helps facilitate contact between this man's family and these kids and not to mention the fact that child he walked away from in iowa has nothing to do with my client initiated a relationship between her children with mr taylor and mr taylor's child by a different relationship she's hardly the person she's being described as by the athlete a person out to destroy no she wanted to do what he promised he would do what the courts promised he should do but now your time is up thank you judge okay your honor i meant to say counsel thank you both the court will take the case under advisement and we will issue a written decision the court stands on recess